# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK J. BOOTH,<br><br>        Petitioner,<br><br>    v.<br><br>MATTHEW CATE, Director of California Department of Corrections and Rehabilitation<br><br>        Respondent.<br>_____/ | 1:08-cv-01134-SMS (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND

On December 8, 2005, following a jury trial in the Madera County Superior Court, Petitioner was convicted of the following offenses: attempted murder (Ca. Pen. Code[1] §§ 664,187, count one); assault with a deadly weapon (§ 245(a)(1), count two); residential first degree burglary (§ 211, count three); first degree burglary of dwelling, trailer coach or inhabited building (§ 459, count four); lewd act upon a child by use of force/violence/duress/menace or fear of immediate and unlawful bodily injury on the victim (§ 667.61(a), count five); carjacking (§ 215(a), count six); furnishing illegal narcotics to a minor (Ca. Health & Saf. Code § 11380,

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

1

count seven); and three counts of false imprisonment (§ 236, counts eight, nine, and ten). (Lodged Doc. No. 1, Abstract of Judgment; CT 416-419.) It was also found true that Petitioner personally used a deadly and dangerous weapon and that he personally inflicted great bodily injury on one of the victims. (CT 350-357, 360-379;RT 1809-1819.)

On January 9, 2006, Petitioner was sentenced as follows: an indeterminate life term for attempted murder (count one), plus a consecutive term of three years for the personal use of a weapon; a consecutive indeterminate term of 25-years-to-life in state prison for committing a lewd act on a child by force or violence (count five); a consecutive term of 9 years for first degree robbery of an inhabited dwelling (count three), plus a consecutive three- year term for inflicting great bodily injury; a consecutive term of 1 year 8 months (one-third the midterm) for carjacking (count six), plus a consecutive term of 1 year for inflicting great bodily injury; a consecutive term of 2 years for furnishing narcotics to a minor (count seven); and, a consecutive term of 8 months for each of the three false imprisonment convictions. (CT 412-413, 416-419; RT 1844-1848.) The court stayed the sentences on counts two and four and the enhancements on count five pursuant to section 654. (CT 412.) The total term of imprisonment was 22 years and 8 months. Petitioner was not awarded pre-sentence custody credits because he was serving a prison term for a conviction in the State of Nevada. (CT 418.) The court imposed a restitution fine and a parole revocation restitution fine in the amount of $48,000 each. (Lodged Doc. No. 1; CT 412-413, 416-419.)

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District. After briefing by the parties, on July 10, 2007, the Court of Appeal reduced the restitution fines to $10,000 each and affirmed the judgment in all other respects. (Lodged Doc. 4.)

On August 13, 2007, Petitioner filed a Petition for Review in the California Supreme Court, which was denied on September 19, 2007. (Lodged Doc. 5.)

On July 20, 2007, Petitioner filed a state petition for writ of habeas corpus in the Madera County Superior Court, which was denied on July 26, 2007. (Lodged Doc. 6.)

On August 13, 2007, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District, which was denied on December 4, 2007. (Lodged Doc. 7.)

On December 17, 2007, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied on June 18, 2008. (Lodged Doc. 8.)

Petitioner filed the instant federal petition for writ of habeas corpus on August 5, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on November 25, 2008, and Petitioner filed a traverse on December 22, 2008. (Court Docs. 22, 23.)

STATEMENT OF FACTS[2]

On July 18, 2004, at about 3:00 a.m., the mother and father were asleep in bed. The mother heard a strange voice and awoke to see Petitioner hitting the father repeatedly with a baseball bat. Their 11-year-old boy heard screaming and ran into the parents' room and was forced onto the bed with his mother. The mother admonished him not to look at Petitioner out of fear that he might hurt them too. While the mother and boy hid their faces under the covers and the father lay bleeding on the floor, Petitioner ransacked the room.

Petitioner forced the family into the small hallway bathroom. He removed the boy and told him to help move boxes. Petitioner told him to play the tape that was in the videotape player.[3] The boy played the tape, but realized it contained pornography and turned it off. When Petitioner asked him why he had turned it off, the boy said he was "not allowed to watch that." Petitioner told the boy he could pick out some of his things to keep. They went to the boy's room and he chose to keep his games and cards, although Petitioner ultimately took them.

Petitioner had repeatedly asked about a gun and when the boy again said there were no guns in the house, Petitioner said he would give him a "truth shot." He said he would give it either to the boy or to his father, although his father might not survive it in his condition. The boy agreed to take the shot, but voiced his concern that it contained poison. To prove it was not poison, Petitioner injected himself first, then injected the boy. The substance was later determined to be methamphetamine.

Petitioner asked the boy whether he had "ever had sex" and if his "thing ever got hard." The boy replied, "[N]o." Petitioner told the boy, "[Y]ou're about to so don't fight it." Petitioner grabbed the boy's pants and pulled one side down. The boy struggled and tried to run away, but Petitioner pulled him to the ground and hit him on the back of the head. Petitioner wrapped his arm around the boy's neck and strangled him. The boy screamed and said he could not breathe. The

---

[2] The Court finds the Court of Appeal correctly summarized the facts in its July 10, 2007 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.
All references to "defendant" have been changed to "Petitioner" in this opinion.

[3] The mother testified the tape did not belong to the household.

3

boy's parents believed the boy was being murdered. Petitioner released the boy. Petitioner said he was not "like that and he just wanted to see what it was like." As Petitioner returned the boy to the bathroom, Petitioner said, "[I]t was fun. Right? It was just a game. It was just a game." The boy agreed it was "a fun game." In the bathroom, the boy was ill and hallucinated from the methamphetamine.

Petitioner locked the bathroom door from the outside. The family heard Petitioner and another man loading items into the family's Ford Expedition, which was parked in the driveway. They could hear the vehicle repeatedly leaving and returning. The mother believed Petitioner took the vehicle's keys from her purse. He had previously taken her bank card and some cash from her purse. The mother did not try to stop Petitioner from taking the vehicle because she was afraid. Petitioner took numerous items, including the vehicle, from the home. About 24 hours after the ordeal began, the mother was able to break the lock and run for help.

(Lodged Doc. 4, at 2-3; footnote in original.)

DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     <u>Standard of Review</u>

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Lockyer</u>, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." <u>Id.</u> (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>, 110 F.3d 1380, 1388 (9th Cir. 1997).

1    C.    Right To Speedy Trial Under Interstate Agreement On Detainers

Petitioner contends that his right to a speedy trial under the Interstate Agreement on Detainers ("IAD") was violated, and the delay resulted in discarded, misplaced, and unreliable evidence.

Petitioner raised this claim in his state post-conviction collateral petitions to the Madera County Superior Court, California Court of Appeal, and California Supreme Court, and all issued summary denials. (Lodged Doc. Nos. 6, 7, 8.) In this instance, AEDPA's strict standard of review is relaxed when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007), *quoting* Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

"The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." Doggett v. U.S., 505 U.S. 654, 651 (1992); see also United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). Although the Sixth Amendment Speedy Trial Clause is broad on its face, its breadth has been qualified by case law which recognizes the relevance of four separate enquiries: (1) whether delay before trial was uncommonly long, (2) whether the government or the criminal defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as the delay's result. Doggett, 505 U.S. at 651; see also Barker v. Wingo, 407 U.S. 514, 530 (1972.)

Doggett breaks the first inquiry, length of delay, into two steps. Doggett, 505 U.S. at 652-653; Beamon, 992 F.2d at 1012. To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. Beamon, 992 F.2d at 1012. If this threshold is not met, the court does not proceed with

the Barker factors. Id. If, however, the threshold showing is made, the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief. Id.

The IAD, codified under California statutory law by § 1389, is "an agreement between California, 47 other states, and the federal government," facilitating the resolution of detainers, based on untried indictments, informations or complaints filed in one jurisdiction, against defendants who have been imprisoned in another jurisdiction. People v. Lavin, 88 Cal.App.4th 609, 612 (2001). Under the IAD, "'[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" Id., at 612, quoting United States v. Mauro, 436 U.S. 340, 359 (1972). Section 1389 should be read in light of Barker v. Wingo, which sets forth the guidelines for properly determining the speedy trial issue. People v. MacDonald, 27 Cal.App.3d 508, 511 (1978).

The IAD establishes a procedure under which a prisoner, against whom a detainer has been lodged, may demand trial within 180 days of a written request for final disposition properly delivered to the prosecutor and appropriate court of the prosecutor's jurisdiction. § 1389, Art. III, subd. (a); People v. Lavin, 88 Cal.App.4th at 612. The prisoner's only requirement under the IAD "is to advise the warden of his request for final disposition of the charges on which the detainer is based. People v. Wilson, 69 Cal.App.3d 631, 636 (1977) (italics added).

Petitioner filed a motion to dismiss his prosecution based on the denial of a speedy trial under the IAD to the trial court, which denied the motion stating:

> . . . [T]he 180-day period is not triggered just because he sent the letter to the DA's Office necessarily or the court when the charges are pending that's not triggered by the notification. If it was received by the District Attorney's Office the case law says that the agencies actually receive the notice, *rather the prisoner's delivery of the request to the authorities in the holding state*. That starts the time running. And then again it says there is a case on point that says the official with the custody of the prisoner has the responsibility, not the defendant, to properly forward notice as specified documentation information regarding the incarceration to the appropriate prosecuting official and the court by registered mail. That's not only in Penal Code Section 1389 but it's also in the case of *People v. Wilson*.

7

> I have reviewed all the documents that were filed and I think he made a substantial effort to comply with 1389. But I don't think he made complete compliance. And so without strict compliance the motion can't be granted. So the motion to dismiss is denied.

(Lodged Doc. 10, at 42-44; italics added.)

The trial court properly found that Petitioner's letter to the Madera County District Attorney's Office did not comply with the procedures set forth in the IAD. See People v. Wilson, 69 Cal.App.3d at 636 (letter sent by an inmate will not invoke the provisions of the IAD). Nor did Petitioner use the proper form designated by the IAD or provide his placement of imprisonment as required. (Lodged Doc. 9, at 125-126.) Therefore, because Petitioner did not properly comply with the provisions of the IAD, the 180-day period within which to bring Petitioner to trial never commenced running.

Furthermore, Petitioner's claim that the denial of his right to a speedy trial resulted in prejudice is completely conclusory. Petitioner merely states the delay resulted in discarded, misplaced, and unreliable evidence. However, Petitioner fails to explain or demonstrate exactly what evidence was discarded, misplaced, or made unreliable. Accordingly, Petitioner's claim amounts to nothing more than pure speculation and is completely conclusory in nature, which is insufficient to demonstrate a basis for relief. See Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994), citing Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970). The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

D. Denial Of Right To Counsel

Petitioner contends that he was denied his right to counsel. He claims that he did not intelligently waive his right to counsel, and his "decision was with 'eyes closed.'" (Petition, at 2.) He also claims the trial court erred by dismissing his trial attorney because he did not intelligently waive the right to counsel and wanted an attorney. (Petition, at 20.) However, the record does not support Petitioner's claim, and the state courts' denial of this claim was not contrary to or an unreasonable application of Faretta v. California, 422 U.S. 806, 819 (1975).

As with the prior claim, Petitioner raised this claim on collateral review to the Madera County Superior Court, California Court of Appeal, and California Supreme Court, all of which issued summary denials. (Lodged Doc. Nos. 6, 7, 8.) In this instance, AEDPA's strict standard of review is relaxed when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d at 981, *quoting* Pirtle v. Morgan, 313 F.3d at 1167; Delgado v. Lewis, 223 F.3d at 982.

A defendant has the right to represent himself pro se or to be represented by an attorney. Faretta v. California, 422 U.S. 806 (1975); United States v. Halbert, 640 F.2d 1000, 1009 (9th Cir.1981) (per curiam). The right to counsel persists unless the defendant affirmatively waives that right. Johnson v. Zerbst, 304 U.S. 458, 464-465 (1938). The courts must indulge every reasonable inference against waiver of the right to counsel. Brewer v. William, 430 U.S. 387, 404 (1977).

"Unlike the right to counsel, the right to self-representation is not self-executing. The Supreme Court has held that a defendant has a Constitutional right to represent himself and proceed without the assistance of counsel if he makes a voluntary, knowing and intelligent decision to do so. Faretta v. California, 422 U.S. 806, 807, 835 (1975). "A defendant's decision to forgo counsel and instead to defend himself--known as a "Faretta waiver"--is valid if the request is timely, not for the purposes of delay, unequivocal, and knowing and intelligent." United States v. Erskine, 355 F.3d, 1161, 1167 (9th Cir.2004), *citing* United States v. Arlt, 41 F.3d 516, 519 (9th Cir.1994); United States v. Hernandez, 203 F.3d 614, 620 (9th Cir.2000). A knowing and intelligent waiver requires awareness of the charges, possible penalties, and dangers and disadvantages of self-representation. Harding v. Lewis, 834 F.2d 853, 854 (9th Cir. 1987). Although it is preferable that the court discuss the elements with the defendant, reversal is not mandated if the record reveals a knowing and intelligent waiver. United States v. Robinson, 913 F.2d 712, 714-715 (9th Cir. 1990). The determination of whether a defendant validly waived his right to counsel is a mixed question of law and fact. Harding v. Lewis, 834

F.2d at 857.  The court considers "three factors to determine whether a request for self-representation is unequivocal: the timing of a request, the manner in which the request was made, and whether the defendant repeatedly made the request."  Stenson v. Lambert, 504 F.3d 873, 882 (9th Cir. 2007).

Here, the record supports the finding that Petitioner's waiver of his right to counsel was knowingly, intelligent, and voluntary and his Faretta motion was reasonably granted.  Prior to commencement of the trial, Petitioner unequivocally expressed his desire to represent himself and no longer wished defense counsel's representation because counsel sought a continuance to adequately prepare for trial.  (RT 73.)  In granting defense counsel's motion, the trial court informed Petitioner that his right to adequate representation of counsel outweighed his right to a speedy trial.  (RT 73-74, 76.)  Petitioner continued to insist that he wished to terminate counsel and represent himself.  He indicated that he did not suffer any mental problems and was of clear mind, and his request was not made out of anger, frustration, or attempt to delay or disrupt the proceedings.  The trial court continued to advise Petitioner of his constitutional rights including, the right to a speedy jury trial, right to utilize the process of the court, which includes subpoenaing witnesses and records, right to confront and cross-examine witnesses, and the right of choice to testify, which Petitioner clearly and freely acknowledged he understood.  (RT 77.)  Petitioner informed the court that he had previously represented himself in criminal matter, and he had a high school education and paralegal training.  (RT 78.)

The trial court proceeded to advise Petitioner of the dangers and disadvantages of representing himself, specifically, that he was proceeding against an experienced prosecutor and he would have to follow all technical rules of substantive law, procedure, and evidence.  Petitioner acknowledged that he understood these disadvantages.  Petitioner also indicated that he understand the nature of the charges against him and the potential penalties.  In light of all the advisements, Petitioner continued to demand to proceed to trial immediately pro per, and assured the trial court that he understood fully all of the consequences attached thereto.  (RT 79-81, 83-88.)

1 | Petitioner's waiver must be viewed as a whole and in the context of the entire proceedings. As expressed in Robinson, "a criminal defendant may be asked to choose between waiver and another course of action, so long as the course of action offered is not constitutionally offense." United States v. Robinson, 913 F.2d at 717 (quoting United States v. Moya-Gomez, 860 F.2d 706, 739 (7th Cir. 1988). The fact that the trial court expressed its willingness to grant a short continuance for defense counsel to adequately prepare for trial is simply not constitutionally offensive, and Petitioner cannot object on such basis. Accordingly, the trial court properly granted Petitioner's request for self-representation and dismissal of his defense counsel. United States v. Robinson, 913 F.2d at 714-716. The state courts' disposition of this claim was a reasonable application of clearly established Supreme Court authority as set for in Faretta v. California, 422 U.S. 806, 819.

E. Prosecutorial Misconduct

Petitioner contends that the prosecution failed to disclose evidence that was favorable to his defense. (Petition, at 11.) He also claims the trial court failed to exercise its discretion in determining what evidence was material for purposes of Brady disclosure. (Petition, at 20.) Petitioner further argues that his right to cross-examine witnesses was violated because the prosecutor "knowingly withheld evidence." (Petition, at 21.) Again, Petitioner raised this claim on collateral review to the Madera County Superior Court, California Court of Appeal, and California Supreme Court, all of which issued summary denials. (Lodged Doc. Nos. 6, 7, 8.)

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also Strickler v. Greene, 527 U.S. 263, 280-281 (1999). The Supreme Court has stated that the duty to disclose such evidence is applicable even though there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107 (1976). The duty to disclose encompasses impeachment evidence as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different." Id., at 682; see also Kyles v. Whitley, 514 U.S. 419, 433-434 (1995). Additionally, "the rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" Strickler, 527 U.S. at 280, *quoting* Kyles, 514 U.S. at 438. To constitute a Brady violation, the Supreme Court has set forth a three-part test: 1) "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) "[T]hat evidence must have been suppressed by the State, either willfully or inadvertently"; and 3) "[P]rejudice must have ensued." Strickler, 527 U.S. at 218-282.

First, the general basis of Petitioner's claim is that the prosecution failed to disclose exculpatory evidence through discovery. However, in order to succeed on a Brady claim, Petitioner must identify precisely what was undisclosed. Knighton v. Mullin, 293 F.2d 1165, 1175 (9th Cir. 2002); Phillips v. Woodford, 267 F.3d 966, 987 (9th Cir. 2001). Mere speculation or "mere suppositions" that the government had exculpatory evidence is insufficient for a Brady non-disclosure claim. United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir. 1986); United States v. Dierling, 131 F.3d 722, 726 (8th Cir. 1997).

Petitioner further contends that he was denied discovery of any latent prints. (Petition, at 11, attachment 1 of 5.) However, at trial, Crime Scene Identification Specialist Delores Floriano testified that she was unable to gather any useable finger prints from the crime scene. (RT 651-657.) Thus, Petitioner's claim that he was entitled to discovery of any latent prints is completely unfounded.

Petitioner claims that he was also denied photographic evidence which would have disclosed that certain evidence was found in the Baker's family vehicle, not in their residence. (Petition, at 11, attachments 2 and 3, of 5.) However, Petitioner fails to demonstrate that such photographs would have exonerated him, given that the evidence at trial established that Petitioner used the Baker vehicle to transport stolen items from the residence. (RT 373-375, 384-387, 480-481.) Therefore, photographic evidence depicting that certain evidence was found in the vehicle and not the residence is insignificant, and Petitioner's claim fails under Brady.

Petitioner also claims that he did not receive photographs of the crime scene. (Petition, at 11, attachment 2 of 5.) However, the record refutes Petitioner's claim and reveals that he

received photographic evidence of the crime scene, and he attaches such copies as evidence in the instant case. (Petition, at Exhibit A; RT 327, 346.) Petitioner further claims that he was not provided a copy of a "possible suspect drawing" to impeach the victims' testimony that he did not have any tattoos. (RT 458.) However, Petitioner overlooks the fact that eleven-year-old victim Dustin Baker testified that Petitioner did have tattoos and such drawing could not have impeached such testimony. (RT 458.) Petitioner's claim therefore fails under Brady.

Petitioner further argues that the trial court failed to "exercise it's [sic] discretion in determining what evidence is material for purposes of *Brady* disclosure." (Petition, at 20.) However, Petitioner never presented a formal Brady motion upon which the trial court would have been required to make such determination. Rather, the record demonstrates that the prosecution made reasonable efforts to provide Petitioner with discovery, as acknowledged by the trial court. (RT 326-327, 329, 345, 404-405.)

Lastly, Petitioner claims that the failure to disclose exculpatory evidence denied him the right to cross-examine witnesses at trial. Again, the record refutes Petitioner's claim as he extensively cross-examined the witnesses during trial (*see* RT 392-425, 427-435, 450-458, 459-465, 481-488, 490, 495-498, 502-509, 623, 628, 633-637, 640-643, 645, 651-694, 707, 715-718, 736, 765-786, 788-798, 805-839), and Petitioner's claim to the contrary is without merit.

In sum, the record reveals that the prosecution made every reasonable effort to provide Petitioner with all discovery. In fact, Petitioner refused the short continuance requested by former defense counsel for the purpose of further preparation for trial, and sought to proceed pro per immediately to trial. (RT 67, 72-75.) To this end, Petitioner's failure to continue his trial, which would have allowed for more effective cross-examination, forecloses any Brady claim based on the disclosure of evidence just before trial. Lawrence v. Lensing, 42 F.3d 255, 257-258.

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent set forth in Brady v. Maryland, 373 U.S. at 87.

F.     Prosecutorial Misconduct - Admission Of False Testimony

Petitioner contends that the prosecutor knowingly presented false testimony and withheld

evidence, and thereby knowingly convicted an innocent person. (Petition, at 18.) He further argues that the trial court abused its discretion by denying his motion for a mistrial based upon this prosecutorial misconduct. (Petition, at 20.)

Petitioner raised this claim on collateral review to the Madera County Superior Court, California Court of Appeal, and California Supreme Court, all of which issued summary denials. (Lodged Doc. Nos. 6, 7, 8.) Therefore, this Court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d at 981, *quoting* Pirtle v. Morgan, 313 F.3d at 1167; Delgado v. Lewis, 223 F.3d at 982.

Petitioner's claim lacks any evidentiary or factual support. Petitioner fails to indicate what specific details or testimony was allegedly false and that the prosecutor "knowingly" presented such false testimony. Such a conclusory allegation fails to provide a basis for habeas corpus relief. Jones v. Gomez, 66 F.3d at 205; James v. Borg, 24 F.3d at 26; Campbell v. Wood, 18 F.3d at 679, citing Boehme v. Maxwell, 423 F.2d at 1058.

However, even assuming Petitioner states a cognizable claim, it fails on the merits. A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171, 106 S.Ct. 2464 (1986) (*quoting* Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (*quoting* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial - i.e., that absent the alleged impropriety, the verdict probably would have been different.

The knowing use of false or perjured testimony against a defendant to obtain a conviction is unconstitutional. Napue v. Illinois, 360 U.S. 264 (1959). However, an allegation only that false evidence or perjured testimony was introduced is not a violation absent knowing use by the

prosecution. Carothers v. Rhey, 594 F.2d 225, 229 (9th Cir. 1979); see also United States v. O'Dell, 805 F.2d 637, 641 (6th Cir. 1986). Petitioner must show that some statement was false. Id. Inconsistencies in testimony do not establish knowing use of perjured testimony. See United States v. Zuno-Arce, 44 F.3d. 1420, 1422-1423 (9th Cir. 1995). There must be specific evidence that the prosecutor knew to be false. Where credibility is fully explored by the jury, it is properly a matter for jury consideration. Id. at 1423. A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony would have affected the judgment of the jury. United States v. Agurs, 427 U.S. at 103.

Petitioner claims that the prosecutor committed misconduct by introducing the false testimony of officers Campbell and Hancock that they found a video box and mask at the "crime scene." (Petition, at 18, attachments 1-2 of 3.) Petitioner claims the officers "planted" this evidence because the video box and mask were found in the Bakers' family vehicle. However, Petitioner fails to establish that the prosecutor committed misconduct by introducing or failing to correct such testimony or withheld any evidence. In fact, the evidence established that Petitioner used the Baker vehicle to transport items that he stole from the residence, and both locations were part of the "crime scene."

Petitioner further claims the prosecutor purposefully misled the jury by presenting an altered photograph to question officers whether his right tooth was missing instead of his left tooth. Petitioner fails to demonstrate any misconduct on the part of the prosecution. Indeed, on cross-examination Petitioner presented a photograph of himself and asked officer Hancock whether all of his teeth were visible, including the upper right middle tooth. (See RT 836-837.) On redirect, the prosecution, over no objection by Petitioner, presented a different photograph of Petitioner, and Hancock indicated that it appeared his left upper tooth was missing and was possibly a cap. (RT 840.) There is simply nothing improper about such questioning and Petitioner fails to demonstrate otherwise.

In addition, as previously stated, mere inconsistencies in testimony does not establish the prosecutor's knowing use of perjured testimony. United States v. Zuno-Arce, 44 F.3d at 1423.

1    In addition, the officers were subjected to cross-examination by Petitioner at trial, who raised the
2    issue of their veracity. (Lodged Doc. 10, at 765-786, 788-798, 800, 805-8839.) Thus, the issue
3    of credibility was properly a matter for the jury to decide. Id.; Carothers v. Rhey, 594 F.2d at
4    229. The state courts' determination of this issue was not contrary to, or an unreasonable
5    application of, clearly established Supreme Court precedent.

Moreover, Petitioner's claim that the trial court erroneously denied his motion for mistrial based upon the prosecutorial misconduct is likewise without merit. As an initial matter, Petitioner did not make a concise formal request for mistrial during trial. Furthermore, this claim fails to state a cognizable federal question. Federal habeas corpus is available only on behalf of a person in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. at 68; Engle v. Isaac, 456 U.S. 107, 119 (1982). A federal court cannot grant habeas relief on the basis of a perceived error of state law. Pulley v. Harris, 465 U.S. 37, 41 (1989). "[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989). Petitioner merely alleges that the trial court abused its discretion in denying his motion for mistrial. A challenge to

a motion for mistrial fails to demonstrate a cognizable federal claim. See Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989).

G.      Insufficiency of Evidence

Petitioner contends that his due process rights were violated because the prosecution "did not prove every element of the crime" as charged and "convicted an innocent person" based upon the identification testimony by the victims. (Petition, at 18 (Claim 5).) He further argues that the victim identification testimony was suggestive and mistaken. (Petition, at 19 (Claim 6).)

Petitioner raised this claim on collateral review to the Madera County Superior Court, California Court of Appeal, and California Supreme Court, all of which issued summary denials. (Lodged Doc. Nos. 6, 7, 8.) Therefore, this court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel

v. Washington, 491 F.3d at 981, *quoting* Pirtle v. Morgan, 313 F.3d at 1167; Delgado v. Lewis, 223 F.3d at 982.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16. Under California law, "[t]he uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." People v. Scott, 21 Cal.3d 284, 296 (1978).

A review of the record reveals that there is simply no basis upon which Petitioner can challenge the victims' identification of him as the perpetrator. All three victims testified at trial and identified Petitioner as the person who burglarized their home and beat Darren Baker with a baseball bat.

Chastity Baker positively identified Petitioner, by hearing his voice, as the person who broke into her home and beat her husband with the baseball bat. (RT 337.) Darren Baker testified that the perpetrator's voice appeared to be "Texan" or "Southern" and positively identified the voice as belonging to Petitioner. (RT 473.) Darren also identified Petitioner in a video from Walmart wearing a jersey taken from his home during the invasion. (RT 480.) Twelve-year-old victim Dustin Baker likewise identified Petitioner as the person he saw in his parents' bedroom beating and hitting his father with a baseball bat. Even though Petitioner wore a mask during the invasion, Dustin was able to see a portion of his face and positively identified Petitioner's hair and blue eyes. (RT 438, 444-447.) Dustin acknowledged that he was unable to identify Petitioner from a photographic lineup; however, he was able to identify Petitioner at trial by his voice as the person who injected him with methamphetamine and pulled down his pants to molest him. (RT 457-459.)

Petitioner challenged each of the victims' credibility on cross-examination (see RT 392-

425, 450-458, 481-489), and there is simply no showing that any of the identification testimony was suggestive or mistaken. The determination of whether the victims' identification of Petitioner at trial were credible is solely for the jury to decide, which was ultimately resolved against Petitioner. See Bruce v. Terhune, 376 F.3d 950, 957-958 (9th Cir. 2004) (credibility determinations for jury to decide even if victim's testimony is uncorroborated so long as not physically impossible); Parker v. Scott, 394 F.3d 1302, 1314-1316 (10th Cir. 2005) (testimony of molest victim not so inconsistent as to require corroboration as long as sufficient under Jackson and not inherently implausible.)

Furthermore, in reviewing whether there was sufficient evidence to support Petitioner's convictions for lewd and lascivious conduct and carjacking, the state court never called into doubt the evidence identifying Petitioner as the perpetrator. (Lodged Doc. 4, at 4-10.) In light of the strong and consistent identification of Petitioner by all three victims, it cannot be said that the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, as established in Jackson v. Virginia, 443 U.S. at 313.

H.  Illegal Enhancement

Petitioner contends that the trial court "imposed an illegal enhancement" pursuant to section 667.61. (Petition, at 20 (Claim 8).) Petitioner specifically claims that the section 667.61 enhancement was not alleged in the accusatory pleading and he was not "previously convicted" of an offense listed in subsection (c), making the resulting enhancement illegal. Petitioner's claim is without merit.

First, Petitioner's challenge to his sentence under section 667.61 involves only a matter of state law and is not subject to federal habeas review. An allegation of error misapplication of state sentencing law does not present a ground for habeas relief. Richmond v. Lewis, 506 U.S. 40, 50 (1992); Hendricks v. Zenon, 993 F.2d 664, 6740675 (9th Cir. 1993). As long as the type of punishment imposed upon a petitioner "is not based upon any proscribed federal grounds such as

being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations of state statutes are matters of state concern." Makal v. Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).

In any event, Petitioner's sentence is valid under California law. Contrary to Petitioner's contention, section 667.61 was alleged in the accusatory pleading. The amended information clearly alleged the following:

SPECIAL ALLEGATION - SEX CRIMES - AGGRAVATED CIRCUMSTANCES:

It is further alleged, *within the meaning of Penal Code sections 667.61(a), (b), and (e)*, as to defendant, PATRICK JOSEPH BOOTH as to Count(s) Five that the following circumstances apply: 1.) The defendant administered a controlled substance to the victim by force, violence or fear in the commission of the above offense in violation of Penal Code section 12022.75. 2). The defendant personally inflicted great bodily injury on the victim or another person in violation of Penal Code section 12022.7.

(Lodged Doc. 9, at 117; italics added.)

There is no merit to Petitioner's claim that he must have been previously convicted of an offense specified in subdivision (c) or the enhancement is illegal. Section 667.61(c) specifically states:


(c) This section shall apply to any of the following offenses:
. . .
(4) Lewd or lascivious act, in violation of subdivision (b) of Section 288.

(Id.; italics added.) In Count Five of the amended information, Petitioner was charged with the willful and unlawful commission of a lewd and lascivious act upon a young victim in violation of § 288(b)(1). It is clear from a plain reading of section 667.61, there is no requirement to have suffered a prior conviction for imposition of the enhancement. The jury's guilty finding as to the section 288 violation for lewd or lascivious act upon minor, and true finding of the section 667.61 special allegation, was sufficient for imposition of a sentence for twenty-five years to life.

Furthermore, Petitioner's challenge amounts to nothing more than an alleged violation of state law which is not subject to federal habeas corpus review. An allegation of error or misapplication of state sentencing law does not present a ground for habeas relief. Richmond v.

Lewis, 506 U.S. at 50; Hendricks v. Zenon, 993 F.2d at 674-675. Accordingly, Petitioner's claim must be rejected.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is directed to enter judgment in favor of Respondent; and,
3. The court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same). In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:   March 20, 2009**                /s/ Sandra M. Snyder
                                           UNITED STATES MAGISTRATE JUDGE